UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLOBAL LICENSING, INC.,

          Plaintiff,                   Case No:

-vs-                                  Honorable

CHICAGO ROAD
CORPORATION,
d/b/a DEJA VU BLUE, and
ROBERT TERZICH,

          Defendants.

Raymond S. Fishback
ARDC No. 6303294
Attorney for Plaintiff
14813 Becky Ct.
Oak Forest, Illinois 60452
(708) 362-2199

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiff, Global Licensing, Inc. ("GLOBAL") hereby moves pursuant to Rule 65 of the

Federal Rules of Civil Procedure, for a temporary restraining order and preliminary injunction

against Defendants, Chicago Road Corporation, d/b/a Deja Vu Blue and Robert Terzich, prohibiting

Defendants from continuing to advertise and or operate under the name "Deja Vu/Deja Vu Blue."

In support of this motion, GLOBAL submits the accompanying Memorandum and Declaration of

Dawn Beasley, all of which are incorporated herein by reference in their entirety.

GLOBAL is the owner of the well known and federally registered family of DEJA VU

trademarks for entertainment services, including DEJA VU, DEJA VU SHOWGIRLS, DEJA VU FUSION, DEJA VU-COAST TO COAST, DEJA VU FOUNTAIN OF YOUTH ARTESIAN SPRING WATER, and DEJA VU LOVE BOUTIQUE. GLOBAL's family of DEJA VU marks are widely used and recognized nationwide and in Illinois. Defendants' promote and operate an entertainment establishment named "Deja Vu/Deja Vu Blue." Indeed Defendants have a sign located above their establishment, which reads "deja vu." *(See Attached Exhibit "A").* Undoubtedly, consumers will likely believe that this "Deja Vu/Deja Vu Blue" is somehow affiliated with or endorsed by GLOBAL. As such, Defendants' use of "deja vu" is an infringement of GLOBAL's rights in its DEJA VU mark and family of marks, in which case irreparable harm is presumed and the public's interest is best served by preventing the Defendants from conducting business under the "Deja Vu Blue/Deja Vu" name and ordering them to remove all signage from the business bearing the "deja vu" name and cease all use of the DEJA VU name. GLOBAL has made good faith efforts to resolve this dispute with Defendants, but has been unable to do so. Therefore, a delay in hearing GLOBAL's motion for temporary restraining order and preliminary injunction would cause GLOBAL serious harm.

WHEREFORE, GLOBAL respectfully requests that this Court enter (1) a temporary restraining order requiring Defendants to immediately cease all use, advertising and promotion under the designation of "Deja Vu Blue/Deja Vu," remove its permanent sign bearing the "deja vu" name, and refrain from using the DEJA VU name or any other DEJA VU formative mark in connection with their business; and (2) a subsequent preliminary injunction enjoining Defendants from using the DEJA VU name or any other DEJA VU formative mark in connection with its business until final adjudication of the merits of this action.

-2-

Dated: January 29, 2012                    Respectfully Submitted,


                                           By: /s/ Raymond S. Fishback
                                           RAYMOND S. FISHBACK
                                           (ARDC No. 6303294)
                                           ATTORNEY FOR PLAINTIFF
                                           14813 BECKY CT.
                                           OAK FOREST, ILLINOIS 60452
                                           PHONE: 708/362-2199

-3-

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLOBAL LICENSING, INC.,

           Plaintiff,                   Case No:

-vs-                                Honorable

CHICAGO ROAD
CORPORATION,
d/b/a DEJA VU BLUE, and
ROBERT TERZICH,

           Defendants.

Raymond S. Fishback
ARDC No. 6303294
Attorney for Plaintiff
14813 Becky Ct.
Oak Forest, Illinois 60452
(708) 362-2199

## MEMORANDUM IN SUPPORT OF
## GLOBAL LICENSING's MOTION FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II. BACKGROUND .............................................................................................................3

    A. The DEJA VU Family of Marks ...................................................................... 3
    B. Defendants' Disregard for GLOBAL's Intellectual Property Rights ................... 6

III. A TEMPORARY RESTRAINING ORDER AND SUBSEQUENT
    PRELIMINARY INJUNCTION ARE NECESSARY TO PROTECT GLOBAL's
    VALUABLE FAMILY OF MARKS...........................................................................7

    A. Standard ...........................................................................................................7
    B. Likelihood of Success on the Merits ...............................................................8

        1. GLOBAL has Valid Trademark Rights in its Deja Vu Mark and
            Family of Deja Vu Marks...........................................................................9

        2. Defendants' Use of the Name "Deja Vu" Creates a Likelihood of
            Confusion................................................................................................9

            a. Defendants' "Deja Vu" Name is Substantially Similar to the
               DEJA VU Mark and the Family of DEJA VU Marks...................10

            b. Defendants' Services are the Same as GLOBAL's.........................11

            c. Defendants are Using the "DEJA VU" Name in a Similar Manner
               and Location................................................................................11

            d. GLOBAL's DEJA VU Family of Marks are Strong......................12

            e. Defendants Have Demonstrated a Blatant Disregard for
               GLOBAL's Trademark Rights........................................................13

        C. GLOBAL Has No Adequate Remedy at Law.............................................13

        D. GLOBAL Will be Irreparably Harmed.......................................................14

        E. Balance of Hardships Tips in GLOBAL's Favor.........................................15

        F. A Temporary Restraining Order is in the Public's Interest.........................15

    IV. CONCLUSION.................................................................................16

## TABLE OF AUTHORITES

**Cases**                                                                                           **Pages(s)**

*Abbott Labs v. Mead Johnson & Co.,*
    971 F.2d 6 (7th Cir. 1992)...............................................................................................14

*Brach Van Houten Holding, Inc. v. Save Brachs' Coalition for Chicago,*
    856 F. Supp. 472 (N.D. Ill. 1994)....................................................................................10

*Eli Lilly & Co. v. Natural Answers, Inc.,*
    233 F.3d 456 (7th Cir. 2000).......................................................................................10,12

*First Tech. Safty Sys., Inc v. Depinet,*
    11 F.3d 641 (6th Cir. 1993)...............................................................................................7

*Inc. v. McDonald's Corp.,*
    695 F.Supp. 198 (D. Md. 1988).......................................................................................12

*Int'l Kennel Club of Chicago v. Mighty Star, Inc..,*
    846 F.2d 1079............................................................................................................14

*International Profit Associates, Inc. v. Paisola,*
    461 F. Supp.2d 672 (N.D. Ill. 2006)(*Bucklo,J.*)................................................................8

*J & J Snak Foods Corp. v. McDonald's Corp.,*
    932 F.2d 1460 (Fed. Cir. 1991).......................................................................................12

*James Burrough Ltd. v. Sight of the Beefeater, Inc.,*
    540 F.2d 266 (7th Cir. 1976).....................................................................................9,14,16

*Kinney v. International Union of Operating Engineers,*
    994 F.2d 1271 (7th Cir. 1993)............................................................................................8

*Munters Corp. v. Matsuri America, Inc.,*
    909 F.2d 250 (7th Cir. 1990)..............................................................................................8

*TransUnion LLC v. Credit Research, Inc.,*
    142 F.Supp.2d 1029 (N.D. Ill. 2001)........................................................................8,12,14

*Ty, Inc. v. Jones Group Inc.,*
    237 F.3d 891 (7th Cir. 2001)......................................................................................passim

*U.S. v. United Mine Workers,*
330 U.S. 258, 67 S. Ct. 677 (1947)..................................................................................7
*Watkins Prods. Inc. V. Sunway Fruit Prods., Inc.,*
311 F.2d 496 (7th Cir. 1962), *cert. denied,* 373 U.S. 904, 83 S. Ct. 1291 (Apr. 29,
1963)..............................................................................................................................10

*Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb, Inc.,*
698 F.2d 862 (7 th Cir. 1983)........................................................................................14

## STATUTES

15 U.S.C. § 1065.................................................................................................................4

15 U.S.C. § 1072.............................................................................................................6,13

15 U.S.C. § 1115(a)............................................................................................................9

15 U.S.C. § 1125...............................................................................................................10

## OTHER AUTHORITIES

Rule 65 of the Federal Rules of Civil Procedure..............................................................2

Rule 65(a) of the Federal Rules of Civil Procedure.........................................................8

Rule 65(b) of the Federal Rules of Civil Procedure.........................................................7

Moore's Federal Practice...................................................................................................7

## **LIST OF EXHIBITS**

**Exhibit A** Picture of Defendants' Signage

**Exhibit B** Declaration of Dawn Beasley

> **Attachment 1** Registration Copies for DEJA VU, DEJA VU SHOWGIRLS, DEJA VU FUSION, DEJA VU LOVE BOUTIQUE and DEJA VU FOUNTAIN OF YOUTH ARTESIAN SPRING WATER

**Attachment 2** Picture of Deja Vu Billboard

**Attachment 3** Deja Vu Website Pages

**Attachment 4** Pictures of Deja Vu Signage

**Exhibit C** Demand Letter

## I.     INTRODUCTION

Plaintiff, Global Licensing, Inc., ("GLOBAL"), owns the well-known DEJA VU family of federally registered trademarks for entertainment service businesses, including DEJA VU, DEJA VU SHOWGIRLS, DEJA VU FUSION, DEJA VU-COAST TO COAST, DEJA VU FOUNTAIN OF YOUTH ARTESIAN SPRING WATER, and DEJA VU LOVE BOUTIQUE. This DEJA VU family of marks is one of Global's most valuable assets.

Defendant, Chicago Road Corporation, d/b/a Deja Vu Blue, despite having full knowledge of GLOBAL's trademark rights and receiving requests from GLOBAL to refrain from using the "Deja Vu" name, has continued to promote and conduct business under this confusingly similar name. Indeed, the "deja vu" signage is prominently displayed outside the establishment located at 14112 Chicago Road, Dolton Illinois 60419. ("picture of signage," attached hereto as Exhibit A). If Defendants are allowed to continue to conduct business under this confusingly similar name Global will be irreparably harmed. A temporary restraining order and a preliminary injunction thereafter, are necessary to prevent irreparable harm to GLOBAL and its trademark rights.

Accordingly, under Rule 65 of the Federal Rules of Civil Procedure, GLOBAL seeks: (1) a temporary restraining order requiring Defendants to immediately cease all use, advertising and promotion under the designation "deja vu," remove its permanent sign bearing the "deja vu" name, and refrain from using the "deja vu" or any other DEJA VU formative mark; and (2) a subsequent preliminary injunction enjoining Defendant from using the "DEJA VU" name or any other DEJA VU formative mark in connection with its entertainment establishment until final adjudication of the merits of this action.

## II.    BACKGROUND

### A.    The DEJA VU Family of Marks

GLOBAL has filed its complaint and this motion to protect one of its most valuable assets, namely, the goodwill and customer recognition associated with its family of trademarks and trade names comprising the term "Deja Vu."

GLOBAL is a preeminent licensing company based in Durand, Michigan, which licenses entertainment establishments throughout the United States. (Declaration of Dawn Beasley, ¶ 2, attached hereto as Exhibit B, hereinafter referred to as "Beasley Decl."). Since their creation, GLOBAL and the predecessor owner of the Marks, Deja Vu Consulting, Inc., have been considered one of the most innovative licensing companies in the United States. (Beasley Decl. ¶ 3) . GLOBAL currently licenses more than 40 entertainment establishments in California, Colorado, Illinois, Indiana, Kentucky, Louisiana, Michigan, Minnesota, Nevada, Ohio, Tennessee, Washington, Florida, Maryland, Oklahoma, and continues to expand in key locations across the United States, further developing its national reputation. (Beasley Decl. ¶ 3). Presently, GLOBAL licenses its marks to premier entertainment establishments located throughout the United States under well-known names and trademarks, including Deja Vu Showgirls, Deja Vu Erotic Ultra Lounge, Deja Vu On Main, Deja Vu Union Station, Deja Vu Midway, Deja Vu Presents and Deja Vu Airport. (Beasley Decl. ¶ 4). GLOBAL licenses its marks to  entertainment establishments that offer a broad range of entertainment options as part of their entertainment services. (Beasley Decl.  ¶ 4).

Many years ago, GLOBAL and its predecessor owner of the Marks, Deja Vu Consulting, Inc., began establishing its DEJA VU family of marks when it commenced use of its DEJA VU mark in connection with  nationally renowned entertainment services (Reg. No. 1,726,389, registered

-3-

October 20, 1992).(Beasley Decl. ¶ 5 ). Since then, GLOBAL and its predecessor owner of the Marks, Deja Vu Consulting, Inc., has expanded its use of the marks comprised of the term "Deja Vu" to include numerous other registered marks, many of which are now incontestable pursuant to 15 U.S.C. § 1065, Including DEJÁ VU (Reg. No. 1,682,003, registered April 7, 1992 for Periodic Publication); DEJA VU (Reg. No. 2,709,218, registered April 22, 2003 for entertainment services); DEJA VU (Reg. No. 4,208,159, registered September 18, 2012 for entertainment services); DEJA VU SHOWGIRLS (Reg. No. 2,297,828, registered September 14, 1999 for entertainment services); DEJA VU SHOW GIRLS (Reg. No. 4,208,158, registered September 18, 2012 for entertainment services); DEJA VU-COAST TO COAST (Reg. No. 2,404,571, registered November 14, 2000 for entertainment services); DEJA VU FUSION (Reg. No. 3,915,364, registered February 8, 2011 for entertainment services); DEJA VU LOVE BOUTIQUE (Reg. No. 3,915,364, registered January 25, 2012 for retail gift shops and retail stores featuring adult oriented items); and DEJA VU FOUNTAIN OF YOUTH ARTESIAN SPRING WATER (Reg. No. 3,631,789, registered August 22, 2006 for bottled drinking water).

Over the past years, GLOBAL and its predecessor owner of the Marks, Deja Vu Consulting, Inc., has invested substantial time, effort and resources in promoting and marketing its marks for entertainment services under and in connection with its DEJA VU family of marks. (Beasley Decl. ¶ 7). For example, GLOBAL and its predecessor owner of the Marks, Deja Vu Consulting, Inc., has promoted and marketed its marks in connection with entertainment services and in connection with its DEJA VU family of marks in print media, billboards, and in other ways customary in the industry. (Beasley Dec. ¶ 7).

GLOBAL and its predecessor owner of the Marks, Deja Vu Consulting, Inc., has made many

-4-

common law trademark uses of the DEJA VU mark and the family of DEJA VU marks. GLOBAL

and its predecessor owner of the Marks, Deja Vu Consulting, Inc., has used the DEJA VU mark and

family of marks continuously and in connection with the provision of its business for over 30 years.

There is an expectation of excellence for every entertainment operation authorized to use the Global

Family of Marks. (Beasley Decl. ¶ 7). GLOBAL maintains a website for its entertainment services

at www.dejavu.com. GLOBAL and its predecessor owner of the Marks, Deja Vu Consulting, Inc.,

extensively cross-promotes its numerous marks in connection with entertainment establishments by

prominently displaying the names of GLOBAL's and its predecessor owner of the Marks, Deja Vu

Consulting, Inc.'s, entertainment licensees establishments and using the Deja Vu mark and the Deja

Vu Family of Marks at its licensees various entertainment establishments and though its website,

which is accessible nationwide. (Beasley Decl ¶ 9). Because of GLOBAL's and its predecessor

owner of the Marks, Deja Vu Consulting, Inc.'s, cross-promotional efforts, patrons of GLOBAL

licensees establishments across the United States are familiar with the DEJA VU family of marks

and associate them with GLOBAL. (Beasley Decl ¶ 9).

As a result of GLOBAL's and its predecessor owner of the Marks, Deja Vu Consulting,

Inc.'s, continuous and extensive use of its DEJA VU mark and DEJA VU family of marks in

connection with GLOBAL's licensing of entertainment establishments, the marks have developed

considerable customer recognition. (Beasley Decl ¶ 10). The DEJA VU family of marks thus has

acquired a further distinctiveness and secondary meaning signifying GLOBAL, and GLOBAL and

its predecessor owner of the Marks, Deja Vu Consulting, Inc., has cultivated and GLOBAL now

owns considerable and valuable goodwill in and symbolized by the DEJA VU family of marks.

(Beasley Decl ¶ 10). Indeed, marks comprising the term DEJA VU have come to be recognized by

-5-

customers and identifying and distinguishing GLOBAL's licensed entertainment services, and GLOBAL's licensees services alone. (Beasley Decl ¶ 10). These marks are GLOBAL's most valuable assets.

Because of the considerable value of the DEJA VU mark and the family of DEJA VU marks to GLOBAL's business, GLOBAL devotes a considerable amount of time and resources to policing its marks and enforcing its rights to prevent infringement. (Beasley Decl ¶ 11).

## B.    Defendants' Disregard for GLOBAL's Intellectual Property Rights

Notwithstanding GLOBAL's and its predecessor owner of the Marks, Deja Vu Consulting, Inc.'s, longstanding rights in its DEJA VU mark and family of DEJA VU marks, Defendants have continued to promote and conduct business under the "DEJA VU BLUE/DEJA VU" name, which is confusingly similar. Upon discovering Defendants' use of the "Deja Vu" name in connection with their business, GLOBAL demanded that Defendants cease use of the designation "Deja Vu" as such is likely to cause consumer confusion with GLOBAL and the services it offers under and in connection with the DEJA VU family of marks. (Beasley Dec ¶ 12, See also demand letter attached hereto as Exhibit C). Defendants, however, have refused to cease promoting and conducting business under the name "Deja Vu Blue/Deja Vu."

Defendants' actions are a blatant disregard for GLOBAL's intellectual property rights. Not only did Defendants have constructive knowledge of GLOBAL's and its predecessor owner of the Marks, Deja Vu Consulting, Inc.'s, federally-registered DEJA VU family of marks prior to their unauthorized use of the name "Deja Vu" pursuant to 15 U.S.C. § 1072, but on information and belief, Defendants had actual knowledge of GLOBAL's and its predecessor owner of the Marks, Deja Vu Consulting, Inc.'s, longstanding use and ownership of its DEJA VU Family of Marks. Thus,

-6-

Defendants knowingly and willfully adopted, used and continue to use a mark confusingly similar to GLOBAL's DEJA VU Family of Marks with constructive and actual knowledge or GLOBAL's DEJA VU mark and family of DEJA VU marks.

In light of Defendants' continued use of the "Deja Vu" name in connection with similar services as those offered for many years by GLOBAL and its predecessor owner of the Marks, Deja Vu Consulting, Inc., under its federally-registered DEJA VU family of marks, their refusal to respond to GLOBAL's demands, and their conducting and promotion of their business under the infringing "Deja Vu" name, GLOBAL has no choice but to seek protection of its valuable DEJA VU mark and family of DEJA VU marks through a temporary restraining order and subsequent preliminary injunction.

## III.     A TEMPORARY RESTRAINING ORDER AND SUBSEQUENT PRELIMINARY INJUNCTION ARE NECESSARY TO PROTECT GLOBAL'S VALUABLE FAMILY OF MARKS

### A.     STANDARD

When a party reasonably fears irreparable injury, a temporary restraining order may be granted to preserve the status quo until the court has an opportunity to rule on the application for a preliminary injunction. *See Moore's Federal Practice, §65.30, citing to U.S. v United Mine Workers, 330 U.S. 258, 293, 67 S. Ct. 677 (1947) and First Tech Safety Sys., Inc. V Depinet, 11 F.3d 641, 650 (6th Cir. 1993)*. A temporary restraining order under Rule 65(b) of the Federal Rule of Civil Procedure is appropriate where, as here, the movant establishes that: (1) its case has a "better than negligible" likelihood of success on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if the injunction is not granted, which outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public

-7-

interest. *Ty, Inc. v Jones Group, Inc., 237 F.3d 891 (7ᵗʰ Cir. 2001)*. A subsequent preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure is appropriate under the same standard. *International Profit Associates, Inc., v Paisola, 461 F.Supp.2d 672, 675-76 (N.D. Ill 2006) (Bucklol, J.)* citing *Long v Bd. Of Educ., Dist. 128, 167 F.Supp.2d 990 (N.D. Ill 2001)* (standard for issuing temporary restraining order identical to standard for preliminary injunction).

As set forth below, the facts in this case meet these requirements and amply support issuance of a temporary restraining order and preliminary injunction against Defendants to prevent irreparable harm to GLOBAL and its trademark rights.

## B.    LIKELIHOOD OF SUCCESS ON THE MERITS

To establish a likelihood of success on the merits for purposes of a temporary restraining order, GLOBAL must demonstrate a "better than negligible" chance of prevailing on one or more of its claims. *Kinney v International Union of Operating Engineers, 994 F.2d 1271, 1275 (7ᵗʰ Cir. 1993)*. Here GLOBAL's complaint asserts claims for trademark infringement and false designation or origin under the Lanham Act (15 U.S.C. § 1125(a)), violation of the Illinois Deceptive Trade Practices Act, and unfair competition under Illinois common law. To establish a claim for trademark infringement and false designation of origin, GLOBAL must show that (1) it has a valid trademark and (2) the defendant's misuse of the trademark is likely to cause confusion. *Munters Corp. V Matsuri America, Inc., 909 F.2d 250, 272 (7ᵗʰ Cir. 1990)*. Furthermore, under Illinois law, proof of trademark infringement is sufficient to establish a violation under the Illinois Deceptive Trade Practices Act, and also constitutes unfair competition under Illinois common law. *TransUnion LLC v Credit Research, Inc., 142 F.Supp.2d 1029, 1038 (N.D. Ill. 2001)*. A strong claim for trademark infringement, and hence, a violation of the claims under Illinois law, are present here. Certainly

GLOBAL's chances of prevailing on its claims far exceed a "better than negligible" chance.

### 1. Global has Valid Trademark Rights in its DEJA VU Mark and Family of DEJA VU Marks.

A federal registration of a trademark is *prima facie* evidence of a claimant's ownership of a mark, the validity of the registration, and the claimant's exclusive right to use the mark on the goods specified in the registration. See *15 U.S.C. §1115(a)*; see also *James Burrough, Ltd. V Sign of the Beefeater, Inc., 540 F.2d 266, 273 (7th Cir. 1976)*. As set forth in Section II, above, GLOBAL not only has a registration for the mark DEJA VU (Reg. No. 1,726,389, registered October 20, 1992), but also numerous other federal registrations for marks within its DEJA VU Family, including DEJA VU (Reg. No. 1,682,003, registered April 7, 1992); DEJA VU (Reg. No. 2,709,218, registered April 22, 2003); DEJA VU (Reg. No. 4,208,159, registered September 18, 2012); DEJA VU SHOWGIRLS (Reg. No. 2,297,828, registered September 14, 1999); DEJA VU SHOW GIRLS (Reg. No. 4,208,158, registered September 18, 2012); DEJA VU-COAST TO COAST (Reg. No. 2,404,571, registered November 14, 2000); DEJA VU FUSION (Reg. No. 3,915,364, registered February 8, 2011); DEJA VU LOVE BOUTIQUE (Reg. No. 3,915,364, registered January 25, 2012); and DEJA VU FOUNTAIN OF YOUTH ARTESIAN SPRING WATER (Reg. No. 3,631,789). Notwithstanding GLOBAL's and its predecessor owner of the Marks, Deja Vu Consulting, Inc.'s, extensive common law trademark rights, GLOBAL has valid and exclusive trademark rights in its DEJA VU mark and family of DEJA VU marks by virtue of these registrations alone.

### 2. Defendants' Use of the Name "DEJA VU" Creates a Likelihood of Confusion.

"One entering a field already occupied by another has a duty to select a [mark] that will avoid

confusion." *Watkins Prods. Inc., v Sunway Fruit Prods., Inc., 311 F.2d 496, 499 (7th Cir. 1962), cert. denied, 373 U.S. 904, 83 S. Ct. 1291 (Apr. 29, 1963)*; see also *Ty, Inc., 237 F3d at 903.* A likelihood of confusion can be as to source, sponsorship, endorsement or association; for example, a consumer who is likely to perceive that one permits another to use its mark is confused. See Brach *Van Houten Holding, Inc., v Save Brachs' Coalition for Chicago, 856 F.Supp. 472, 475 (N.D. Ill, 1994)* ("...the Lanham Act is concerned not only with confusion over the source of goods, but also with deceptive appearances of approval"). Further, a false designation of origin actionable under §43(a) of the Lanham Act (15 U.S.C. § 1125(a))(Count II of GLOBAL's complaint) exists where consumers are likely to be confused as to the origin, sponsorship, or approval of the defendants or their services. *See* 15 U.S.C. § 1125.

In assessing whether there exists a likelihood of confusion, courts consider: (1) the degree of similarity between the marks; (2) the similarity of the products or services; (3) the area and manner of concurrent use; (4) the strength of the plaintiff's mark; (5) any evidence of actual confusion; and (6) defendant's intent. *Ty, Inc., 237 F.3d at 897.* These factors are "not a mechanical checklist, and 'the proper weight given to each...will vary from case to case'". *Eli Lilly & Co. V Natural Answers, Inc., 233 F.3d 456, 462 (7th Cir. 2000)* quoting *Dorr-Oliver, Inc., v Fluid-Quip, Inc., 94 F.3d 376, 381 (7th Cir. 1996).* As set forth below, all of these considerations heavily favor a finding of a likelihood of consumer confusion.

a. **Defendants' "Deja Vu" Name is Substantially Similar to the DEJA VU Mark and the Family of DEJA VU Marks.**

The name "Deja Vu" speaks for itself; it is a formative of the mark DEJA VU for which GLOBAL has substantial trademark rights. Not only does GLOBAL own an incontestable

-10-

registration for the mark DEJA VU for entertainment services (Reg. No. 1,682,003), it has established substantial rights in its family of DEJA VU marks, which comprise numerous DEJA VU formative marks. Not only does the name "Deja Vu" wholly incorporate, GLOBAL's DEJA VU mark, it is substantially similar to many of DEJA VU family of marks and has an inherently high propensity to be mistaken as a GLOBAL mark. "Deja Vu/Deja Vu Blue"will almost certainly be perceived as a member of GLOBAL's DEJA VU family of marks, such as DEJA VU SHOWGIRLS, DEJA VU-COAST TO COAST, etc. The substantial similarity of the marks at issue therefore weighs heavily in favor of a likelihood of confusion.

### b. Defendants' Services are the Same as GLOBAL's.

Defendants' are using the "Deja Vu/Deja Vu Blue" name in connection with their entertainment services, which is exactly the same or similar services in connection with which GLOBAL uses its DEJA VU family of mark, including, but not limited to its registered Mark DEJA VU for entertainment services (Reg. No. 1,726,389). Consumers are therefore likely to attribute the parties' respective business to a single source. The identity of the parties respective services also weighs heavily in favor of likelihood of confusion. This likelihood poses significant irreparable harm to GLOBAL's reputation and goodwill associated with its family of marks.

### c. Defendants are Using the "DEJA VU" Name in a Similar Manner and Location.

Even though GLOBAL and its family of marks are nationally known, Illinois is one of the states GLOBAL and its predecessor owner of the Marks, Deja Vu Consulting, Inc., has devoted much effort and time over the years. Thus, the areas of concurrent use of the parties' respective marks substantially overlap. Furthermore, since both parties are in the entertainment business their

-11-

services share the same marketing channels within the local area. This factor certainly weights in favor of a likelihood of confusion.

### d.     GLOBAL's DEJA VU Family of Marks are Strong.

The "strength" of a trademark "refers to the distinctiveness of a mark, or more precisely, its tendency to identify the goods and services sold under the mark as emanating from a particular ... source." *Eli Lilly & Co., 233 F.3d at 464* (quotation and citations omitted). An arbitrary mark is distinctive and strong. *Trans Union LLC v Credit Research, Inc., 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001)*. A family of marks may also have a synergistic recognition that is greater than the sum of each mark. See *Quality Inns Int. 'l v McDonald's Corp., 695 F. Supp. 198, 212, (D. Md. 1988)*. "A family of marks is a group of marks having a recognizable common characteristic, wherein the marks are composed and used in such a way that the public associates not only the individual marks, but the common characteristic of the family, with the trademark owner." *J & J Snack Foods Corp. V McDonald's Corp., 932 F.2d 1460, 1462 (Fed.Cir. 1991)*.

Here, each and every mark in GLOBAL's  family of DEJA VU marks is in and of itself distinctive and arbitrary, and taken together GLOBAL's family of DEJA VU marks is certainly distinctive and arbitrary; these marks strongly identify GLOBAL as the source of the marks. Indeed, DEJA VU formative marks have become synonymous with GLOBAL and its services. GLOBAL and its predecessor owner of the Marks, Deja Vu Consulting, Inc., have been using DEJA VU formative marks for over 30 years in connection with the licensing of entertainment services. (Beasley Decl ¶ 7). And GLOBAL and its predecessor owner of the Marks, Deja Vu Consulting, Inc.,   extensively cross-promotes its numerous entertainment establishments by prominently displaying the names of various GLOBAL entertainment establishments through its website, which

-12-

is accessible nationwide. (Beasley Decl ¶ 9). Because of GLOBAL's and its predecessor owner of

the Marks, Deja Vu Consulting, Inc.'s, cross-promotion efforts, patrons of GLOBAL establishments

across the United States are familiar with the family of DEJA VU marks and associate them with

GLOBAL. (Beasley Decl ¶ 9). The family of DEJA VU marks comprises distinctive and strong

marks, which further supports a likelihood of confusion.

### e. Defendants Have Demonstrated a Blatant Disregard for GLOBAL's Trademark Rights.

Defendants had constructive notice of GLOBAL's rights in its DEJA VU mark and family

of DEJA VU marks by virtue of its federal registrations. 15 U.S.C. § 1072.  In addition, Defendants

had actual notice of GLOBAL's and its predecessor owner of the Marks, Deja Vu Consulting, Inc.'s,

rights in its DEJA VU mark and family of DEJA VU marks before Defendants progressed with their

use of the "Deja Vu/Deja Vu Blue" name on their entertainment establishment. Counsel for

GLOBAL sent a letter to Defendants informing Defendants of GLOBAL's rights in its DEJA VU

mark and family of DEJA VU marks and demanding that Defendants cease use of the "Deja Vu/Deja

Vu Blue" name. (See Attached Exhibit C).  After being fully apprised of GLOBAL's trademark

rights, in a letter dated October 15, 2012, Defendants refused to cease promoting and operating their

business under the name "Deja Vu/Deja Vu Blue" and there have been no changes since.

As the foregoing demonstrates, GLOBAL has established a likelihood of success on the

merits for purposes of a temporary restraining order.

### C.    GLOBAL HAS NO ADEQUATE REMEDY AT LAW

A showing of economic or actual damages is not required in order for a temporary restraining

order or preliminary injunction to issue; the "owner of a trademark is damaged by later use of a

-13-

similar mark which place[s] the owner's reputation beyond its control, through no loss in business is shown." *Int'l Kennel Club of Chicago v Mighty Star, Inc., 846 F.2d 1079, 1091*, quoting *James Burrough, Ltd., 540 F.2d at 274.* In fact, as courts have noted, "[d]amages occasioned by trademark infringement are by their very nature not susceptible of adequate measurement for remedy at law." *Trans Union, LLC, 142 F.Supp. 2d at 1046*, quoting *Processed Plastic Co., v Warner Comm., 675 F.2d. 852, 858 (7th Cir. 1982).* Thus, no remedy at law could fully compensate GLOBAL for its actual or potential loss of reputation or goodwill in its family of DEJA VU marks caused by Defendants' infringing acts. Such injuries would be immeasurable, and GLOBAL would be left without adequate remedy if a temporary restraining order is not granted.

### D. GLOBAL WILL BE IRREPARABLY HARMED

Damages resulting from trademark infringement are by their very nature irreparable and not susceptible of adequate measurement or remedy at law. *Int'l Kennel Club of Chicago, Inc., 846 F.2d at 1092*, quoting *Processed Plastic Co., 675 F.2d at 858* (damages occasioned by trademark infringement are by their nature irreparable and not susceptible of adequate measurement for remedy at law). "Courts readily find irreparable harm in trademark infringement cases because of the victim's inability to control the nature and quality of the infringer's goods." *Wesley-Jessen Division of Schering Corp., v Bausch & Lomb, Inc., 698 F.2d 862, 867 (7th Cir. 1983).* Further, irreparable harm is presumed in trademark infringement cases because "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damages to reputation and loss of goodwill, caused by such violations." *Abbott Labs v Mead Johnson & Co., 971 F.2d 6, 16 (7th Cir. 1992).* By virtue of Defendants' unlawful activity in this case, they have infringed GLOBAL's family of DEJA VU marks, thereby placing the valuable goodwill in GLOBAL's family of DEJA

-14-

VU marks in their hands, over whom GLOBAL has no control. *See James Burrough Ltd., 540 F.2d at 276* ("the owner of a mark is damaged by a later use of a similar mark which places the owner's reputation beyond its control"). The damage caused by Defendants' activities thus will, as a matter of law, cause irreparable harm to GLOBAL.

## E.     BALANCE OF HARDSHIP TIPS IN GLOBAL'S FAVOR

The irreparable harm to GLOBAL outweighs any potential harm to Defendants. With full knowledge of GLOBAL's and its predecessor owner of the Marks, Deja Vu Consulting, Inc.'s, long-standing rights in its family of DEJA VU marks, Defendants continuing with their plans to use the infringing DEJA VU name on their entertainment establishment. Moreover, a temporary restraining order would not put Defendants out of business; it need only suspend Defendants' use of the DEJA VU name, which is likely to cause consumer confusion if not restrained by this Court. Defendants would be free to open their business under a designation that is not comprised of, or confusingly similar to the family of DEJA VU marks. That Defendants might lose money as a result of the costs associated with changing its signage and other promotional materials is but a consequence of their own willful conduct and does not weigh against entry of a temporary restraining order or preliminary injunction. *Ty, Inc., 237 F.3d at 903.* (Balance of harms favored issuance of preliminary injunction; defendant "having adopted its course...cannot now complain that having to mend its ways will be too expensive"), quoting *Ideal Indus., Inc., v Gardner Bender, Inc., 612 F.2d 1018, 1026 (7th Cir. 1979).*

## F.     A TEMPORARY RESTRAINING ORDER IS IN THE PUBLIC'S INTEREST

The issuance of a preliminary injunction is necessary not just to protect GLOBAL's rights, but to protect the public interest as well. In trademark infringement actions, the rights infringed are

-15-

"the right of the public to be free of confusion and the synonymous right of the trademark owner to control his product's reputation". *James Burrough Ltd., 540 F.2d at 274.* These interests will certainly be threatened if Defendants are allowed to continue infringe and disparage GLOBAL's family of DEJA VU marks.

## IV. CONCLUSION

GLOBAL will be irreparably harmed if Defendants are allowed to continue operating and promoting their entertainment establishment under the name "Deja Vu/Deja Vu Blue." GLOBAL Licensing, Inc., therefore respectfully requests this Court to enter an order granting: (1) a temporary restraining order requiring Defendants to immediately cease all use, advertising and promotion under the designation "Deja Vu" or "Deja Vu Blue," remove their permanent sign bearing the "Deja Vu" name, and immediately stop using the "Deja Vu" name or any other DEJA VU formative mark in connection with their business; and (2) a subsequent preliminary injunction enjoining Defendants from using the "Deja Vu" name or other DEJA VU formative mark in connection with their business.

Dated: January 29, 2012                     Respectfully Submitted,


                              By: /s/ Raymond Fishback
                              RAYMOND S. FISHBACK
                              (ARDC No. 6303294)
                              ATTORNEY FOR PLAINTIFF
                              14813 BECKY CT.
                              OAK FOREST, ILLINOIS 60452
                              PHONE: 708/362-2199